## State of Vermont v. Kevin Wilcox

[628 A.2d 924]

No. 92-355

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 21, 1993

272

*Christopher C. Moll*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Sam Kono*, Public Defender, Brattleboro, for Defendant-Appellant.

**Dooley, J.** Defendant appeals from a jury conviction of disturbing the peace by use of the telephone, in violation of 13 V.S.A. § 1027(a). He argues that the court erred by instructing the jury that the intent required under the statute should be measured at the time the threat was made rather than at the time the call was placed. Relying on the same statutory argument, defendant also contends that the court erred by denying his motion for judgment of acquittal based on insufficiency of the evidence. We reverse.

The alleged victim received a call from defendant, who apparently wished to complain to her husband, a town selectman, about perceived injustices he had suffered at the hands of the town. The caller identified himself, and the wife recognized his voice from several previous calls. Despite the wife's repeated attempts to convince defendant that she could not help him, the phone call lasted approximately twenty minutes. The wife finally hung up when defendant stated something to the effect, "How would you like to be shot?" Defendant was charged under § 1027(a)(ii), which criminalizes telephoning another and threatening "to inflict injury or physical harm to the person" if done with the "intent to terrify, intimidate, threaten, harass or annoy." The information stated that defendant was "a person who with intent to intimidate telephoned another . . . and threatened to inflict physical harm."

After the State rested at trial, defendant moved for judgment of acquittal on the ground that the State had failed to prove that he had the requisite intent at the time the call was placed. In denying defendant's motion, the court ruled that intent should be measured at the time the threat was made. Defendant then rested. He renewed his argument prior to the court's charge, but the court again rejected his interpretation of the statute and gave an instruction on intent in accordance with its earlier ruling. After some deliberation, the jury foreman indicated that the jury was having difficulty reconciling the court's instruction on intent with the statutory language. The court then stated that, as a matter of law, "intent must be measured at the time the words were spoken, not at the time the telephone call was made or immediately prior to it." The jury returned a guilty verdict shortly thereafter.

Section 1027(a) of Title 13 was added in 1967 in response to concern over increased use of the telephone as a vehicle to harass persons. *Hearing on H-42 Before the House Judiciary Committee*, January 18, 1967, microfilm no. F-671, at 1–2 (statement of representative of telephone company that requested bill). Similarly worded statutes exist in many other jurisdictions, see Annotation, *Validity, Construction, and Application of State Criminal Statute Forbidding Use of Telephone to Annoy or Harass*, 95 A.L.R.3d 411 (1979) [hereinafter *Use of Telephone to Annoy or Harass*], including Arizona, whose telephone harassment statute served as a model for § 1027. *Hearing on H-42, supra*, at 4–5 (statements of deputy attorney general and telephone company's attorney).

All of the jurisdictions that have addressed this issue, including Arizona,[1] have concluded that specific intent under these statutes is measured at the time the call is placed. See, e.g., *Gormley v. Director, Conn. State Dep't of Probation*, 632 F.2d

---

[1] Because the cited Arizona case was decided after Vermont enacted 13 V.S.A. § 1027, there is no presumption that the Legislature adopted the construction of the Arizona statute provided by that case. See *Hartnett v. Union Mut. Fire Ins. Co.*, 153 Vt. 152, 154–55, 569 A.2d 486, 487 (1989); *State v. Szarkowitz*, 460 N.W.2d 819, 823–24 (Wis. Ct. App. 1990). Nonetheless, the case is persuasive. See *State v. Francis*, 151 Vt. 296, 307–08, 561 A.2d 392, 398–99 (1989) (adopting 1979 holding of Massachusetts court interpreting statute which served as model for Vermont statute enacted in 1973).

938, 941–42 (2d Cir. 1980) (interpreting similarly worded Connecticut statute); *State v. Hagen*, 558 P.2d 750, 753 (Ariz. Ct. App. 1976); *State v. Gattis*, 730 P.2d 497, 502 (N.M. Ct. App. 1986). The reason for the consensus on this point is clear. The statutes were drafted to respond to a concern that they might unconstitutionally infringe upon protected speech. See, e.g., *Walker v. Dillard*, 523 F.2d 3, 4–5 (4th Cir. 1975) (Virginia telephone harassment statute determined to be facially overbroad because it regulated speech rather than conduct). Indeed, the language of the telephone harassment statutes, as well as the courts' interpretations of that statutory language, are intended to make the statutes impervious to overbreadth challenges grounded on the First Amendment. See *People v. Klick*, 362 N.E.2d 329, 331 (Ill. 1977) (legislature has attempted to avoid infringing on protected speech by making the call itself the criminal act); *Use of the Telephone to Annoy or Harass, supra*, at 415–16.

Thus, the courts have responded to overbreadth challenges by holding that the statutes proscribe conduct rather than speech. As the Arizona Court of Appeals stated:

> By specifying the *intent* with which the call must be made and the nature of the language prohibited, the statute clearly demonstrates that the prohibited activities find no protection under the First Amendment. . . .

> We cannot conceive that the State is abridging anyone's First Amendment freedom by prohibiting telephone calls . . . that threaten physical harm, provided such calls are made with the intent specified in the statute.

*Hagen*, 558 P.2d at 753 (emphasis in original). The reasoning of other courts has been the same. See *Gormley*, 632 F.2d at 941–42 ("Clearly the Connecticut statute regulates *conduct*, not mere speech. What is proscribed is the making of a telephone call, with the requisite intent and in the specified manner."); *Gattis*, 730 P.2d at 502 (by focusing on intent at time call is made, New Mexico statute proscribes conduct rather than speech).

■■ The State argues that such a holding would frustrate the purpose of the statute because it would be impossible to prove a caller's intent at a time before the actual threat. We

disagree. Intent is usually inferred from circumstances rather than shown by direct proof. *Caldwell v. State*, 337 A.2d 476, 484 (Md. Ct. Spec. App. 1975) (construing telephone harassment statute). The intent to make a threatening phone call can be inferred from the actions, conduct or words of the defendant. *People v. Cooper*, 336 N.E.2d 247, 249 (Ill. App. Ct. 1975); *Gattis*, 730 P.2d at 503; see *Lusch v. State*, 356 A.2d 277, 283 (Md. Ct. Spec. App. 1976) (circumstances surrounding repeated calls to public official were sufficient for jury to conclude that calls were made with intent to harass).

The overriding objective of statutory construction is to declare the intent of the Legislature. *State v. Yudichak*, 147 Vt. 418, 420, 519 A.2d 1150, 1151 (1986). Where the meaning of a statute is plain on its face, the statute must be enforced according to its express terms. *Heisse v. State*, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983); see *Yudichak*, 147 Vt. at 420, 519 A.2d at 1151 ("We presume that the plain, ordinary meaning of statutory language is intended."). Section 1027(a) makes it unlawful for a "person who, with intent to terrify, intimidate, threaten, harass or annoy, telephones another and ... threatens ... harm." Thus, the plain meaning of the statutory language, like the statute's legislative history, indicates that intent should be measured at the time the person telephones. Accordingly, we hold that the intent element of § 1027(a) is measured at the time the telephone call is made. In light of our holding, the court's instruction on intent was erroneous, and the conviction must be reversed.

Because defendant also objected to the court's denial of his motion for judgment of acquittal, we must determine whether the matter should be remanded for a new trial. The standard we employ is whether, when viewed most favorably to the State, the evidence is sufficient to convince a reasonable trier of fact that all the elements of the crime are satisfied and the defendant is guilty beyond a reasonable doubt. *State v. Elkins*, 155 Vt. 9, 17–18, 580 A.2d 1200, 1204 (1990). At the outset in this determination, we reject defendant's contention that the statement—"How would you like to be shot?"—is not covered by the statute because it was an equivocal question rather than a threat to inflict physical harm. The jury could conclude that the statement constituted a threat.

The more difficult question is whether the evidence on intent was sufficient to withstand the motion for judgment of acquittal. Although it is a close question, we conclude that a reasonable jury could not have determined that defendant made the call with the intent to intimidate. The wife testified that defendant had made several prior calls, but there was no testimony regarding the number or nature of those calls other than that they involved complaints. The first thing defendant did when the wife answered the instant call was to identify himself and ask to speak to her husband. The wife testified that when she informed defendant that her husband was not home, defendant called her a liar. Despite this comment by defendant early on in the conversation, the wife's testimony indicated that defendant was initially civil, but that the tenor of the call changed as their discussion continued. According to the wife, defendant became more and more angry as he complained about the various ways the town had harassed him. Finally, at the end of twenty minutes, defendant made the threatening comment. The wife did not recall the general context in which the comment was made or what she said immediately prior to the comment. The State concedes in its brief that the call was made "apparently for a legitimate purpose."

■ The fact that defendant identified himself, that he wished to speak to someone other than the person he eventually threatened, or that he had a legitimate purpose for making the call is not determinative of whether he placed the call with an intent to intimidate. The threat need not be anonymous and there need not be any particular targeted victim. Further, the fact that defendant called with a legitimate purpose in mind does not foreclose the possibility that there was also an unlawful intent behind the call. Unlike some statutes in other jurisdictions, our statute does not require that the call be made "solely" to harass or threaten another. Compare *State v. Badiner*, 412 N.W.2d 810, 811 (Minn. Ct. App. 1987) (though the defendant's stated purpose in making numerous calls was to stop noise in apartment above him, court affirmed telephone harassment convictions because Minnesota statute does not require calls be made "solely" to harass), with *State v. Patterson*, 534 S.W.2d 847, 851–52 (Mo. Ct. App. 1976) (state failed to show

that purpose of repeated complaining calls to city clerk was "solely to harass," as required by statute).

When we consider these facts coupled with the wife's testimony that the tenor of the call grew increasingly hostile as it continued and that the threatening statement was not made until the end of the call, we conclude that a reasonable jury could not have found that defendant made the call with an intent to threaten.[2]

*Reversed.*

_____

[2] Because the information charged that defendant telephoned another with an intent "to intimidate," we need not consider whether the evidence was sufficient, as a matter of law, for a jury to find that defendant made the phone call with an intent to "harass or annoy." 13 V.S.A. § 1027(a).